IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE LUIS ESPINOSA-ALMONTE, | : | CIVIL ACTION NO. **3:CV-12-2514** |
| Petitioner | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| MARY SABOL, *et al.*, | : | |
| Respondents | : | |

**REPORT AND RECOMMENDATION**

**I.     Procedural Background.**

On December 17, 2012, the Petitioner, Jose Luis Espinosa-Almonte, a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") confined at York County Prison, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Petitioner, proceeding *pro se*, names as Respondents: the Department of Homeland Security; Janet Napolitano, Secretary of the Department of Homeland Security; John Morton, Assistant Secretary for ICE; Thomas L. Decker, District Director of the Pennsylvania Field Office for Detention; and Mary Sabol, Warden of the York County Prison ("YCP") (collectively,

"Respondents")[1], where Petitioner is currently confined.[2] (Doc. 1). Petitioner paid the filing fee.

The Court issued an Order to Show Cause on December 19, 2012, and directed Respondents to answer the habeas petition. (Doc. 3). After being granted an extension of time, Respondents filed a Response to the Habeas Petition with attached Exhibits on January 10, 2013. (Docs. 6 & 6-1). Petitioner did not file a Traverse. On April 24, 2013, Respondents filed a Notice of Supplemental Authority indicating that the Third Circuit Court of Appeals recently issued a precedential decision in *Sylvain v. Attorney General of the United States*, –-F.3d–-, 2013 WL 1715304 (3d Cir. April 22, 2013), which is directly on point with the main issue in the instant case, namely, whether Petitioner is subject to mandatory detention under 8 U.S.C. §1226(c) since he was not immediately taken into custody by ICE "when released" from custody of his removable offense. Respondents also attached a copy of the Third Circuit's opinion to their filing. (Doc. 8). We agree with Respondents, based on *Sylvain v. Attoreny General of the United States*, that Petitioner's claim he is not subject to mandatory detention is without merit.

The habeas petition is now ripe for disposition.

---

[1]We note that Petitioner named one correct Respondent in his habeas petition, namely, Mary Sabol, who is the Warden at YCP. *See* 28 U.S.C. §§ 2242 and 2243. The other four named Respondents are not proper Respondents. *Id*.

[2]As Petitioner recognizes, this Court has venue and jurisdiction with respect to his habeas petition challenging his continued physical custody by ICE at YCP. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) (finding that a petition pursuant to 28 U.S.C. § 2241 challenging an alien's present physical custody in the United States should be filed in the district where the petitioner is confined).

**II.      Factual Background.**

Petitioner is a citizen and native of the Dominican Republic. (Docs. 1 and 6). He entered the United States on a P1 Visa, as a nonimmigrant member of an internationally recognized entertainment group, on November 30, 1994. (Ex. 1). The P1 Visa authorized him to remain in the United States no later than December 19, 1994. (Id.).

On July 21, 2001, Petitioner was convicted in the Court of Common Pleas, Montgomery County, Pennsylvania, of Possession of a Controlled Substance, namely, cocaine. (Doc. 6-1, Ex. 3). As a result of that conviction, Petitioner was sentenced to six months to a year in prison, and one year probation. (Doc. 6-1, Ex. 2). Also, as a result of that conviction, on April 10, 2006, ICE issued a Notice to Appear, stating that Petitioner Esipnosa-Almonte was removable pursuant to Section 237(a)(1)(B) of the Immigration and Naturalization Act ("INA"), as he had remained in the United States for a period of time longer than his Visa permitted. Further, ICE alleged that he was removable pursuant to Section 237(a)(2)(B)(i) of the INA as he had been convicted of a violation of any law or regulation of a State, or a foreign country relating to a controlled substance other than a single offense involving possession for one's own use of 30 grams of or less of marijuana. (Doc. 6-1, Ex. 1).

Petitioner first came before the immigration court on May 25, 2006, in Newark, New Jersey. (Doc. 6-1, Ex. 11). After a series of appearances and continuances, Petitioner filed a motion to change venue to Philadelphia, which was granted by the IJ on March 6, 2009. (Id.). As such, Petitioner first appeared before the Philadelphia immigration court on April 13, 2009,

at which time he contested ICE's removal charges on the grounds that he had never committed an aggravated felony, as the ICE ostensibly charged. (Id.).

On September 2, 2011, the Philadelphia Police Department arrested Petitioner for forgery, identity theft, tampering with public records, and unsworn falsification to law enforcement charges. (Doc. 6-1, Ex. 2a). At that time, ICE filed a detainer against Petitioner to take him into custody based on the new charges against him. (Id.). On September 16, 2011, ICE filed a motion to change venue of Petitioner's removal proceedings to York County, PA, and motion was granted on October 3, 2011. (Id.).

On September 20, 2011, Petitioner had a bond hearing before the immigration court, which was adjourned to gather more information on Petitioner's criminal history. (Doc. 6-1, Ex. 11). On September 21, 2011, the hearing did not resume because of an error in scheduling. (Id.).

At a master calender hearing on November 2, 2011, Petitioner admitted to the noncriminal allegations, but disputed the drug-related conviction, asserting that his conviction involved marijuana and not cocaine. (Id.). At that time, the IJ found Petitioner's conviction was for cocaine, and the IJ found Petitioner ineligible for a 212(h) waiver, which he would need to change his status to lawful permanent resident. Further, the IJ found that Petitioner was ineligible for bond. (Id.).

Again, on December 13, 2011, Petitioner appeared before the immigration court at a master calender hearing, at which point the court found him ineligible for both bond and 212(h)

waiver to adjust his status. (Id.). Petitioner also was allowed to discuss his voluntarily departure from the United States. (Id.).

Petitioner appeared before the immigration court with his new attorney on January 31, 2012, however, his new attorney requested a continuance in order to prepare more adeuqately. (Id.). On February 27, 2012, the court granted the new attorney's motion to withdraw and substitute counsel, and since that point, Petitioner's counsel in his removal proceedings has remained Attorney Kevin Santos. (Id.). Attorney Santos attempted to argue against ICE's removal charges once again at a hearing before the immigration court on February 28, 2012, and successfully argued for a continuance for further preparation, until April 2, 2012. (Id.). At that April 2, 2012 hearing, Petitioner did not successfully dispute his drug conviction, and thus he was not eligible for adjustment of status and cancellation of removal. As a result, the hearing was adjourned for Petitioner to file an application for asylum. (Id.).

On April 24, 2012, Petitioner's file was requested by the United States Citizenship and Immigration Service Center, which was attempting to adjudicate a U-Visa that the Petitioner had submitted, in which he claimed he was the victim of a crime. (Id.). Based on that proceeding, the Philadelphia immigration court continued his master calender hearing to June 6, 2012, pending the adjudication of the Petitioner's application for a U-Visa. (Id.).

On May 22, 2012, Petitioner was released to the custody of Philadelphia law enforcement for criminal prosecution, and, as a result, on June 4, 2012, the ICE filed a motion to close Petitioner's immigration case, as he was no longer in ICE custody. (Doc. 6-1, Ex. 5). Petitioner was returned to ICE custody, however, on July 17, 2012. (Doc. 6-1, Ex. 11).

Eventually, on September 25, 2012, Petitioner again came before the immigration court at a master calender hearing, however his counsel sought, and was granted, continuance until October 31, 2012. (Doc. 6-1, Ex. 7). The hearing was continued further to November 14, 2012, at which point the immigration court allowed, despite ICE's objection, another continuance for the Petitioner's U-Visa to be adjudicated. (Id.).

On December 20, 2012, ICE received notice that Service Center adjudicating the U-Visa had requested more evidence from the Petitioner on October 23, 2012, within 87 days, yet he had not timely responded. (Id.). At this point, as a result of Petitioner's instant §2241habeas petition filed in this federal Court, ICE motioned for a removal order from the IJ. (Id.). Attorney Santos motioned to withdraw, and the immigration court granted that motion on December 27, 2012. (Id.).

On January 7, 2013, Petitioner came before the immigration court at a master hearing, during which the IJ advised Petitioner that his many continuances were delaying his case, and that the only remedy available to his detention was voluntary departure from the United States. (Id.). Because Petitioner was without counsel at this hearing, however, the immigration court granted another continuance so that he could obtain new counsel.

There is nothing in the current record filed by either Petitioner or Respondents indicating if Petitioner ever received an order of removal or voluntary removal.

### III.   Claims of Habeas Petition.

In his Petition for a Writ of Habeas Corpus, Petitioner challenges ICE's determination that he is subject to mandatory detention under § 236(c) [8 U.S.C. § 1226(c)] without giving him

a bond hearing. (Doc. 1). He challenges the authority of ICE to detain him while he is waiting for a final removal order and argues that he is not subject to mandatory detention because he was not placed in the custody of ICE "when released" from custody on a removable offense. (*Id.*, pp. 19-24). In essence, Petitioner argues because the Attorney General did not take him into custody when he was released from his criminal conviction for a removable offense, the last of which was in 2001, but allowed him to live in the community for years before taking him into custody in September of 2011, he is not subject to mandatory detention without a bond hearing.

The Respondents argue that Petitioner is subject to mandatory detention under section 236(c) of the INA and that his detainment has not been unreasonably prolonged such that he would be entitled to habeas relief. (Doc. 6). As stated, Respondents filed a Notice of Supplemental Authority indicating that the Third Circuit Court of Appeals recently issued a precedential decision in *Sylvain v. Attoreny General of the United States*, –-F.3d–-, 2013 WL 1715304 (3d Cir. April 22, 2013), which is directly on point with the issue in this case. (Doc. 8).

**IV.     Discussion.**

Thus, the issue is whether Petitioner is subject to mandatory detention provisions of 8 U.S.C. §1226(c) since ICE did not take him into custody until after the September 2, 2010 arrest by the Philadelphia Police Department for forgery, identity theft, tampering with public records, and unworn falsification to law enforcement charges. (Doc. 6-1, Ex. 2a).

Initially, based on *Thomas v. Hogan*, 2008 WL 4793739, *3 (M.D. Pa.), we agree with Petitioner that this Court has jurisdiction to decide his habeas petition. In *Thomas*, the Court stated:

> It is well-established that district courts retain jurisdiction to consider an alien's habeas challenge to the statutory framework mandating his detention during removal proceedings. *See* 28 U.S.C. § 2241(c)(3) (noting that the writ of habeas corpus may extend to those held in custody in violation of the constitution "or laws or treaties of the United States"); *Demore v. Kim,* 538 U.S. 510, 517, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (finding that the INA does not bar habeas review of statutory or constitutional challenges to detention).

*Id*. *See also Madrane v. Hogan*, 2007 WL 3145956, * 12 - * 13 (M.D. Pa.), 520 F. Supp. 2d 654 (M.D. Pa. 2007); *Dang v. Lowe*, 2010 WL 2044632, 2010 WL 2044634 (M.D. Pa.).

In *Motto v. Sobol,* 2010 WL 146315, *3 (M.D. Pa.), the Court stated:

> The apprehension and detention of aliens, pending removal decisions, are governed by the provisions by § 236 of the INA, 8 U.S.C. § 1226. Under § 1226(a), the Attorney General may issue a warrant for arrest and detention of an alien, pending a decision on whether the alien is to be removed from the United States. Although § 1226(a) permits discretion, (c)(1) states that "The Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." 8 U.S.C. § 1226(c)(1).

*See also*, *Thomas v. Hogan*, 2008 WL 4793739, *1-*2; *Donaldson v. Donate*, 2009 WL 5179539, *2 (M.D. Pa.).

There is no dispute that Petitioner completed his probation based on a conviction which constitutes a removable offense and that ICE did not take him into custody immediately upon his release from probation following his 2001 sentence. Rather, ICE took Petitioner into custody on September 2, 2011, almost ten years later. Nonetheless, ICE and the IJ have

8

determined that Petitioner is subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c), without being eligible for an individualized bond hearing.

The clear language of § 236(c) states that an alien is subject to mandatory detention "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation .... ." *See Cox v. Monica*, 2007 WL 1804335, *1 (M.D. Pa.).

Petitioner states that since he was not immediately detained by ICE when he was first released from probation with respect to his original sentence, and since ICE had waited for almost 10 years to detain him, the mandatory detention provision is no longer applicable to him. Petitioner states that under the plain meaning of §236(c), which is not ambiguous, he is not subject to the mandatory detention provision.

In recent years, as Respondents correctly point out, there have been extensive district court splits as to the interpretation of the "when released" language in §236(c), based primarily upon the ambiguity of the statute. Both Petitioner and Respondents offer persuasive arguments as to the correct interpretation, based on the conflicting prior law. We note, however, that in the recent case of *Sylvain v. Attorney General of U.S.*, decided on April 22, 2013, after the parties in the instant case filed their Petition and Response, the Third Circuit Court of Appeals conclusively resolved the district court splits by interpreting Section 1226(c)(1). *Sylvain v. Attorney General of U.S.*, 714 F.3d 150 (3d Cir. 2013). (*See* Doc. 8).

In *Sylvain*, the courts considered an almost identical set of facts. The Petitioner was a Haitain citizen who had been released from a drug conviction in the United States, yet was not taken into ICE custody until nearly four years later. *Id*. at 153. Just as in the instant case, ICE

9

detained the Petitioner without a bond hearing, and so he filed a writ of habeas corpus, arguing that the mandatory detention did not apply because the "when release" language of §1226(c)(1) implies an obligation to detain immediately upon that release. *Id.* The Third Circuit ultimately decided that it should defer to the Board of Immigration Appeals interpretation of the statute. If held, "Even if the statute calls for detention 'when the alien is released,' and even if 'when' implies something less than four years, nothing in the statute suggests that immigration officials lose authority if they delay." *Id.* at 157.

The *Sylvain* Court premised this holding on several bases. First, it interpreted the language of the statute, finding, "The text does not explicitly remove that authority if an alien has already left custody. We are loath to interpret a deadline as a bar on authority after the time has passed - even when the word 'shall' appears in the text." *Id.* Secondly, the Court takes a public-interest approach, acknowledging that the underlying purpose of the statute is to protect the public by detaining the most dangerous criminal aliens. "Bureaucratic inaction - whether the result of inertia, oversight, or design - should not rob the public of statutory benefits." *Id.* at 158. Based on these two fundamental approaches, and considering the various case precedent, the Third Circuit concluded that the language of §1226(c)(1) does not in anyway contemplate a time limit on detention after a criminal-immigrant's release, and as such, the Court denied the Petitioner's habeas petition.

The Third Circuit Court reiterated its *Sylvain* holding in the case of *Gonzalez-Ramirez v. Secretary of U.S. Dept. Of Homeland Sec.*, decided on June 14, 2013. *See Gonzalez-Ramirez v. Secretary of U.S. Dept. of Homeland Sec.*, 2013 WL 2934090. In that case, the Court was

faced with the same issue, the interpretation of the "when released" language of §1226(c)(1), and again found that, "the Government does not lose its §1226(c) 'mandatory detention' authority if it fails to detain an alien immediately upon release from state custody."[3] *Id*. at *3.

Based upon these recent decisions, therefore, we will follow the Third Circuit's conclusion, and deny Petitioner's Writ. Insofar as Petitioner challenges his mandatory detention on the grounds that he was not detained "when released" from his original sentence, we find that argument is no longer persuasive. Based on *Sylvain* and *Gonzalez-Ramirez*, the issue is now settled in the Third Circuit that the Government does not face any time limit as to when it must detain aliens pursuant to §1226(c)(1). As such, we will recommend that Petitioner's petition for habeas be denied with respect to the issue of whether Petitioner is subject to mandatory detention under §1226(c) since he clearly is. *See Sylvain, supra; Gonzalez-Ramirez, supra*.

To the extent that Petitioner articulates a challenge to the duration of his detention, under *Zadvydas*, and lack of due process procedural safeguards, we must also consider this claim. Petitioner asserts that, "immigration detention violates due process unless it is reasonably related to its purpose," and furthermore that, "Petitioner's prolonged detention, when he poses no significant danger or flight risk, and when he has a substantial challenge to removal [his

---

[3] We acknowledge that we previously addressed this issue directly in our Report and Recommendation ("R&R") in *Dang v. Lowe*, 2010 WL 2044632, and in our R&R issued in *Gonzalez v. Dept. of Homeland Sec.*, 2010 WL 2991396, and we concluded that in order for the Government to properly exercise the mandatory detention under §1226(c)(1), it must detain aliens immediately after their release from custody. The District Court agreed with our reasoning in those cases, and adopted the R&R's in full. Based on the Third Circuit's decision in *Gonzalez-Ramirez*, and *Sylvain*, however, our recommendations in the stated decisions have been overturned.

11

§1226(c)(1) argument], bears no reasonable 'relation to the Government's purpose'." (Doc. 1, p. 11). Petitioner cites to *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The United States Supreme Court held in *Demore v. Kim*, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the convicted alien's due process rights. In *Demore*, a lawful permanent resident filed a habeas petition challenging the mandatory custody provision of § 1226(c), pursuant to which he was held for six months during the pendency of removal proceedings against him. *Id*. Justice Kennedy, in concurring, stated that due process may require an individualized determination if continued detention becomes unreasonable or unjustified. *Id*.

However, the Court's holding in *Demore* has not resulted in an absolute or an unconditional approach to the issue of detention pending removal for convicted aliens. While the Court in *Demore* held that mandatory detention of a convicted alien pending removal is constitutional, federal courts nationwide and within this district have echoed Justice Kennedy's concurrence in determining that the prolonged or indefinite detention of aliens under § 1226(c) may violate due process rights. *See Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)(deciding that an alien was entitled to be released on bail after being imprisoned for over two years during removal proceedings); *Nunez-Pimental v. U.S. Department of Homeland Security*, 2008 WL 2593806, at * 5 (M.D. Pa. 2008) (deciding that prolonged detention justified habeas relief under reasonable conditions of supervision)*; Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-66 (9th Cir. 2008) (deciding that periodic reviews of an alien's prolonged detention can satisfy due process concerns); *Occelin v. District Director for Immigration Custom*

*Enforcement*, 2009 WL 1743742 (June 17, 2009 M.D. Pa.)(Rambo, J.)(ordering a hearing at which the government must justify the petitioner's prolonged detention).

In *Lawson v. Gerlinski*, 332 F.Supp.2d 735 (M.D. Pa. 2004)(Vanaskie, J.), the Court held that an eighteen (18) month detention period for a petitioner, who had obtained a stay of removal while he challenged the enforceability of his removal order, was unreasonable. Relying on the Sixth Circuit's decision in *Ly v. Hansen,* 351 F.3d 269 (6th Cir. 2003), the Court stated, "As recognized in *Ly*, the Supreme Court in *Zadvydas v. Davis* 'established that deportable aliens, even those who already had been ordered removed, possess a substantive Fifth Amendment liberty interest, and that the interest was violated by indefinite detention.'" *Lawson*, 332 F.Supp.2d at 745 (internal citations omitted). The Court added that the Third Circuit has stated that "even excludable aliens, *i.e.*, non-lawful permanent residents, with criminal records are protected by the Due Process Clause when it comes to prolonged detention." *Id.* at 744. (citing *Ngo v. Immigration and Naturalization Service*, 192 F.3d 396, 398-399 (3rd Cir. 1999)).

In *Madrane v. Hogan*, 520 F.Supp.2d 654 (M.D. Pa. 2007)(Kane, C.J.), the Court determined that the Supreme Court's decision in *Demore* was not meant to protect prolonged or indefinite detention. The Court stated that the *Demore* decision was "grounded in repeated reference to the anticipated brevity that pre-final order removal proceedings are expected to take in the ordinary course." *Id*. at 664. The Court also noted that several courts have determined that due process requires an alien who is subject to lengthy mandatory detention must be given a bail hearing or be released, citing the Sixth Circuit's decision in *Ly* and a plethora of other cases. See *Madrane*, 520 F.Supp.2d at 665; *Motto, supra.*

13

In *Motto*, 2010 WL 146315, *3-*4, the Court stated:

> The United States Supreme Court held in *Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution. In *Demore,* a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him. The Supreme Court held that detention of lawful permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation proceedings. *See id.,* 538 U.S. at 523-524. Significantly, the *Demore* court repeatedly qualified its holding by noting that mandatory detention is constitutionally permissible for the "brief," 538 U.S. at 513, 523, "limited," *id.* 526, 529 n. 12, 531, and "temporary," *id.* at 531, period necessary for removal proceedings. When it moves beyond the brief and limited period reasonably necessary to accomplish removal proceedings, mandatory detention is inconsistent with both the due process required by the Constitution and the statutory purposes of the INA.
>
> The growing consensus within this district and, indeed it appears throughout the federal courts, is that the prolonged detention of aliens under § 1226(c) raises serious constitutional concerns. *See, e.g., Tijani v. Willis,* 430 F.3d 1241, 1242 (9th Cir.2005); *Ly v. Hansen,* 351 F.3d 263, 267-68 (6th Cir.2003); *Lawson v. Gerlinski,* 332 F.Supp.2d 735, 744-46 (M.D.Pa.2004); *Prince v. Mukasey,* 593 F.Supp.2d 727, 734 (M.D.Pa.2008); *Madrane v. Hogan,* 520 F.Supp.2d 654 (M.D.Pa.2007). Although mandatory detention under § 1226(c) serves the statutory purpose of guaranteeing an alien's presence at removal proceedings, prolonged detention contravenes the intent of Congress that such proceedings proceed expeditiously. *Ly,* 351 F.3d at 269; *see also Patel v. Zemski,* 275 F.3d 299, 304 (3d Cir.2001), overruled on other grounds by *Demore,* 538 U.S. at 516 (noting "[ t] he current immigration laws reflect part of a growing effort by Congress to expedite the removal of criminal aliens").

In *Chowdhury v. Holder*, 2011 WL 765974, *7 (D.N.J. 2-25-11), the Court stated:

> The Third Circuit has not applied *Demore* in any published decision. However, in *Castellanos v. Holder,* 337 Fed. App'x 263 (3d Cir.2009), the Third Circuit affirmed the dismissal of a § 2241 petition raising a challenge

> under *Zadvydas* to petitioner's mandatory detention pursuant to
> § 1226(c) pending the outcome of his petition for review of an order of
> removal denying asylum, where the Court of Appeals had stayed
> petitioner's removal.

In *Alli v. Decker*, 644 F.Supp. 2d 535, 2009 WL 2430882 (August 10, 2009 M.D. Pa.)(Jones, J.), the Court adopted a reasonableness standard to assess the extended detention of aliens and ensure that the requirements of due process are served. Adopting a variation of the approach taken by the Sixth Circuit case of *Ly v. Hansen*, the Court stated:

> The Court construes § 1226(c) as authorizing mandatory detention for the period of time reasonably necessary to promptly initiate and conclude removal proceedings. If an alien detained pursuant to § 1226(c) makes a showing via a habeas petition that detention is no longer reasonable, the alien must be afforded a hearing before the habeas court at which the government bears the burden of justifying continued detention based on traditional bail factors such as the alien's risk of flight and potential danger to the community.

*Alli v. Decker*, 2009 WL 2430882, *7 (M.D. Pa. 2009); *Jayasekara v. Warden, York County Prison*, 2011 WL 31346 (M.D. Pa. 1-15-11).

The *Alli* Court laid out four factors to consider in determining the reasonableness of continued detention under § 1226(c): 1) whether the detention has continued beyond the average time necessary for completion of removal proceedings; 2) the probable extent of future removal proceedings; 3) the likelihood the removal proceedings will actually result in removal; and 4) the conduct of the alien and the government during removal. *Id*. The Court noted that these factors are not a conclusive or comprehensive list of all considerations, emphasizing that a court should examine the facts of each case to determine whether there has been an unreasonable delay in concluding removal proceedings. *Id*.

In light of the above factors, we find that Petitioner Espinosa-Almone's continued detention has not been unreasonable, nor does it offend the requirements of due process. First, Petitioner's detention has not been unduly prolonged. The Petitioner was taken into custody on September 8, 2011, about twenty one (21) months ago. Although, as Respondents concede in their Response, Petitioner's detention has lasted slightly longer than average time for completion of removal proceedings, we do not find that his detention has been excessive. As Respondents point out, and as detailed above, Petitioner Espinosa-Almonte has requested eight continuances, has requested hearings adjourned to gather more information, and has changed counsel several times, all of which have significantly contributed to the length of his removal proceedings and detention.

Second, there is not a basis to expect that the duration of the future removal proceedings in this matter will be extensive. The Respondents' Response indicates that after Petitioner's January 7, 2013 hearing, he would only be subject to one more hearing, at which point the IJ would deem him removed, or the ICE charges would be dropped.[4] As such, the possibility of a continuing and indefinite incarceration is not a concern at this time. Further, as Respondents point out, if Petitioner is ordered removed from the United States, ICE has regularly been able to return alines to the Dominican Republic.

---

[4] We note that at this time, in June of 2013, neither Petitioner nor Respondents have filed an update as to the current status of the Petitioner's removal proceedings. The most current filings, from January of 2013, indicate that the January 7, 2013 master calender hearing was the only future immigration court hearing scheduled for the Petitioner.

16

Thus, we will recommend that, to the extent Petitioner Espinosa-Almonte claims that his detention violates due process and is unreasonable, such claims should be denied. *See Jayasekara v. Warden, York County Prison,* 2011 WL 31346.

**V.     Recommendation**.

Based upon the foregoing, it is respectfully recommended that the Petitioner's Petition for Writ of Habeas Corpus **(Doc. 1)** be denied.

s/ Thomas M. Blewitt

**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 24, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE LUIS ESPINOSA-ALMONTE, | : | CIVIL ACTION NO. **1:CV-12-2514** |
| Petitioner | : | (Judge Rambo) |
| v. | : | (Magistrate Judge Blewitt) |
| MARY SABOL, *et al.* | : | |
| Respondents | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 24, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

                                                           s/ Thomas M. Blewitt
                                                           **THOMAS M. BLEWITT**
                                                           **United States Magistrate Judge**

**Dated: June 24, 2013**